284 So.2d 185 (1973)
In re Roy Allen RICHARDSON.
No. 6091.
Court of Appeal of Louisiana, Fourth Circuit.
October 22, 1973.
Rehearing Denied October 23, 1973.
Writ Refused November 6, 1973.
Robert E. Lee, Gretna, for plaintiff-appellant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Stewart E. Niles, Jr., New Orleans, for defendants-appellees.
Before SAMUEL, GULOTTA and STOULIG, JJ.
SAMUEL, Judge.
Plaintiff, Charles W. Richardson, filed this suit against his wife, Madeline Cecelia Richardson, as mother and natural tutrix of their minor child, Roy Allen Richardson, to compel her to consent to surgical removal and transplantation of one of the boy's kidneys for donation to his sister, Beverly Jean Richardson, and to give to Beverly's treating physicians, nurses, etc., authority to perform the medical and surgical procedures necessary for the transplantation.
*186 The suit was filed against the child's mother as a procedural vehicle for placing the matter before the court and no objection was made thereto. We note the record clearly shows that Mrs. Richardson also consented, and continues to consent, to the proposed kidney donation. The petition alleges the transplant is necessary within sixty days of the filing of the petition on September 28, 1973 in order to prevent the death of Beverly and that Roy is a mental retardate, 17 years of age, with a mental age of 3 or 4 years.
The court appointed an attorney at law to represent the defendant wife. After trial there was judgment denying the requested authority. Plaintiff has appealed from that judgment.
The record consists of the testimony of Beverly's two treating physicians (Drs. Meyer Kaplan, a specialist in the field of internal medicine, and John C. McDonald, a surgeon practicing in the fields of vascular and transplantation surgery), the plaintiff father and the defendant mother, and the written consent to the transplantation previously given by Beverly, the plaintiff and the defendant. Roy also was placed on the witness stand and briefly questioned by counsel for the defendant and by the court. As thus made up, the record reveals the following facts:
Mr. Richardson is 63 years of age and Mrs. Richardson is 56. Roy is 17 and, because of retardation, has the mental capacity of a 3 or 4 year old child. We must note that an otherwise healthy person in Roy's condition, mongolism, has an average life expectancy of 25 years. Beverly is 32 years of age and divorced. Because of her illness she has spent the last several years at the home of her parents where Roy also resides.
The transplant was recommended because of an almost total loss of kidney function by Beverly, her residual renal function being estimated at approximately 7% to 10% of normal. If she does not receive some form of relief death will occur within a matter of months. She could be sustained indefinitely by two forms of relief: (1) renal dialysis; or (2) the kidney transplant combined with removal of one of her kidneys. The transplant is much preferable because with the other form of relief she would be dependent upon having dialysis three times a week for six hours a day.
Beverly's basic medical problem was characterized as chronic nephritis, or inflammation of the kidneys, accompanied by elevated blood pressure. A spleenectomy was performed very recently with the aim of increasing the blood content of white platelets, thereby aiding coagulation and reducing her hypertensive condition. If the spleenectomy is unsuccessful (at the time of argument in this court the result was not yet known), a kidney transplant would be precluded.
There is also recent clinical evidence of a condition known as Systemic Lupas Erythe-Matosus, abbreviated S.L.E., a disease affecting the capacity of organ tissue to adhere to four layers. This is believed to have enlarged her spleen and to have caused toxic psychosis. S.L.E. cannot be cured, but sometimes it can be arrested and there is an occasional spontaneous remission. At present the S.L.E. is not arrested, and cannot be arrested, because its treatment conflicts with treatment for hypertension. However, drugs used to counteract rejection of the transplanted kidney could also be useful in treating S.L.E. and the hypertension hopefully would be alleviated with a successful transplant. While the S.L.E. would not prevent the transplant, both S.L.E. and chronic nephritis (or acute glumeronephritis) might adversely affect the transplanted kidney.[1]
Plaintiff and defendant have several children, Roy being the youngest. After testing all but one of those other children and Mr. and Mrs. Richardson, it was determined that Roy is the most acceptable *187 donor because he is graphically identical to Beverly, while the others tested are half identical. The physicians estimated that a transplant using one of Roy's kidneys presents a probability of rejection of only 4% or 5% over a period of 3 to 5 years while the risk rejection using a kidney of the others tested is between 20% and 30%. In addition, there is the possibility that Beverly could receive a kidney from another relative or from a cadaver, the primary difference being that the percentage chance of failure would be far greater than if one of Roy's kidneys is used.
The medical evidence further establishes that if a transplant proved to be unsuccessful because of the body's built-in rejection mechanism, subsequent transplants would not be precluded. It is also significant to note the physicians could not estimate how long Beverly would live after a successful kidney transplant for the reason that the longest such successful transplant known to medical science at this time is only 11 years. There is no doubt that from both a medical standpoint and from the standpoint of convenience and life style, a kidney transplant would be more beneficial to Beverly than any other known remedy. However, as we have pointed out, neither a kidney transplant, nor particularly a transplanted kidney from Roy, is an absolute immediate necessity in order to preserve Beverly's life.
There appears to be little jurisprudence involving the issue with which we are presented. Our attention has been called to none, and we know of none, in Louisiana. Plaintiff relies on the case of Strunk v. Strunk, 445 S.W.2d 145, 35 A.L.R.3d 683, in which the Kentucky Court of Appeals held that as a chancery court of general equity jurisdiction it had sufficient inherent power to authorize the donation of a healthy kidney from an adult mental incompetent to his brother. We find the facts in that case, particularly the conclusion relative to the "best interest" of the incompetent, are not similar to the facts in the instant case and we also find that both the procedural and the substantive aspects of the majority opinion are not in accord with Louisiana law.
In Louisiana our law is designed to protect and promote the ultimate best interest of a minor. The closest Louisiana analogy to donation of a bodily organ we have been able to find concerns donation of a minor's property. Under LSA-C.C. Arts. 1476 and 1477, an unmarried minor is prohibited from making any inter vivos donation of his property. LSA-C.C.P. Art. 4275 unequivocally prohibits the donation of a minor's property by his tutor and, when as in this case both parents are alive and not divorced or judicially separated, LSA-C.C.P. Art. 4501 gives to the father of a minor only those powers enjoyed by a tutor of a minor. Since our law affords this unqualified protection against intrustion into a comparatively mere property right, it is inconceivable to us that it affords less protection to a minor's right to be free in his person from bodily intrusion to the extent of loss of an organ unless such loss be in the best interest of the minor. Of course, that statement and our conclusion are restricted to the facts of the present case.
Counsel for plaintiff argues the transplant could be in Roy's best interest because, if it is successful, Beverly could take care of Roy after the deaths of both Mr. and Mrs. Richardson. Such an event is not only highly speculative but, in view of all of the facts, highly unlikely. We find that surgical intrusion and loss of a kidney clearly would be against Roy's best interest.
Our conclusion is that neither his parents nor the courts can authorize surgical intrusion on Roy for the purpose of donating one of his kidneys to his sister, Beverly.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
GULOTTA, J., concurs with written reasons.
*188 GULOTTA, Judge (concurring).
The majority, in my opinion, rightfully assumes that the court is empowered[1] to authorize the transplant of the kidney from the minor, provided certain standards are met, i. e., the best interests of the minor. However, I am of the opinion that before the court might exercise its awesome authority in such an instance and before it considers the question of the best interests of the child, certain requirements must be met. I am of the opinion that it must be clearly established that the surgical intrusion is urgent, that there are no reasonable alternatives, and that the contingencies are minimal. These requirements or prerequisites are not met in this case. Having so determined, we are not confronted with the question of the best interests of the child.
Accordingly, I concur.
NOTES
[1] From a medical standpoint, we have not fully stated Beverly's problems and condition. However, that condition and those problems are sufficiently set forth for a determination of the legal issue presented.
[1] It is erroneously suggested by the appellant who is seeking the authorization that the power and authority of the court in this instance is found in C.C. art. 21. This codal provision does not grant power or authority to the court. It merely sets forth how the court's authority might be exercised in the absence of express law.